UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-80197-Cr-Ryskamp/Hopkins

UNITED STATES OF AMERICA )
)
      Plaintiff )
)
v. )
)
WON SOK LEE, )
)
      Defendant. )
_____ )

## PLEA AGREEMENT

The United States of America and WON SOK LEE, (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Counts One, (1), and Two (2) of the Indictment which counts charge the defendant as follows. Count One charges the defendant with conspiring with Yung Bae Kim, and Jung Bae Kim, also known as John Kim, and others to commit mail and wire fraud in violation of Title 18, United States Code, Secs. 1341 and 1343, respectively; the conspiracy being a violation of Title 18, United States Code, Sec. 371. Count Two (2) charges that the defendant transmitted or caused to be transmitted certain writings by means of wire communication in interstate commerce in connection with a scheme and artifice to defraud and for obtaining money by means of material, false, and fraudulent pretenses, representations, that is, wire fraud, in violation of Title 18, United States Code, Sec. 1343.

2. The government agrees to dismiss all remaining counts of the indictment against the

defendant after sentencing.

3. The defendant is aware that the sentence will be imposed by the court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation by the court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The defendant also understands and acknowledges that as to Count One the court may impose a maximum term of imprisonment of five (5) years followed by a term of supervised release of no more than five (5) years and a fine as high as $250,000. As to Count Two the court may impose a maximum term of imprisonment of twenty (20) years followed by a term of

supervised release of no more than five (5) years and a fine as high as $250,000. The defendant understands that the Court must order restitution to any identified victims in this matter.

5. The defendant further understands and acknowledged that, in addition to any sentence imposed under Paragraph 3 of this agreement, a special assessment in the amount of $200 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

6. The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7. Nothing in this Agreement should be construed as preventing either the defendant or the United States from presenting factual information to the Court or the Probation Office which would assist the Court in making its sentencing determination under Title 18, United States Code, Section 3553 and *Booker v. United States*, 543 U.S. 220 (2005).

8. The United States agrees that it will recommend at sentencing that the court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will make a motion

requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. The United States, however, will not be required to make this motion and any recommendations in this or any other paragraph of this plea agreement if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office and the United States Attorney's Office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

## SENTENCING APPEAL WAIVER

9. The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or a variance from the guideline range that the court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in

Title 18, United States Code, Section 3742(b). However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that he has discussed the appeal waiver set forth in this agreement with his attorney. The defendant further agrees, together with the United States, to request that the district court enter a specific finding that the defendant's waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary.

10. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

JEFFREY H. SLOMAN
ACTING UNITED STATES ATTORNEY

Date: 9/16/09        By: _____
                         STEPHEN CARLTON
                         ASSISTANT UNITED STATES ATTORNEY

Date: 9/16/09        By: _____
                         SUSAN VAN DUSEN, ESQ.
                         ATTORNEY FOR DEFENDANT

Date: 9/16/09        By: _____
                         WON SOK LEE
                         DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. __06-80197-CR-RYSKAMP/HOPKINS__

UNITED STATES OF AMERICA

        **Plaintiff,**

vs.

WON SOK LEE,

        **Defendant.**

_____/

## FACTUAL PROFFER SUPPORTING CHANGE OF PLEA

Defendant Won Sok Lee, (hereinafter referred to as the "defendant"), his counsel, and the United States agree that, had this case proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt, and that the following facts are true and correct and are sufficient to support a plea of guilty as to each of those Counts of the Indictment provided for in the Plea Agreement, which document is incorporated herein by reference:

1. Between 2000 and 2005, KL Group, LLC, and KL Triangulum Management, LLC were Limited Liability Companies with offices in Irvine, California and West Palm Beach, Florida. They were established to advise and control a number of Hedge Funds, which are listed in paragraph one of the indictment, and engaged in day trading of stocks on various exchanges. At all times relevant to the indictment, the LLC's referred to above, and the Hedge Funds they advised, were controlled by defendant, Won Sok Lee and Jung Bae Kim, (also known as "John Kim").

2. Shoreland Trading, LLC was a Broker-Dealer controlled by, among others, defendant Won Lee. Shoreland executed stock trades for the various KL Hedge Funds through numerous accounts at a number of different Wall Street clearing firms. Shoreland Trading LLC was required to be registered with the Securities and Exchange Commission.

3. Between 2000 and 2005, the KL Hedge Funds received about $194 million from about 250 investors. John Kim was held out to be a master day-trader that employed a proprietary trading system earning profits in excess of 100% per year for investors.

4. Between the year 2000 through about February 2005, defendant conspired with John Kim, and Yung Bae Kim, to use the interstate wires and United States Mails to perpetrate a scheme to defraud investors of ordinary prudence and comprehension in the various Hedge Funds out of money or property by means of false representations, pretenses or promises. The nature of the scheme was that investors were lied to in order to induce them to invest in the Hedge Funds, and to induce them to keep their monies invested, or re-invested in different Hedge Funds. The lies took the form of misrepresentations to investors about the performance of the particular funds. To induce them to invest, victims were told that each of the funds was profitable, when in fact none were. These false statements regarding fund performance were made orally, through a website containing false information about KL's profitability, and, once an investor signed up, through false account statements periodically sent to investors by mail and email. Counterfeit clearing firm statements were also used to perpetrate and to further the scheme when needed to entice victims to invest or keep their

money invested. A portion of Investor funds were used to fund lavish office space, giving the false appearance of success. Numerous proprietary traders were placed around the KL offices to give the appearance of a busy, robust operation. Investors, employees of KL and even the traders themselves were falsely told that the "Prop" traders were trading KL Company's own money, when in fact they were trading investor money.

5. The account statements sent to investors falsely stated that the Hedge Funds were earning outstanding profits on a regular basis, when in fact the funds were losing millions of dollars each and every quarter. KL took substantial commissions and performance bonuses out of investor funds based on the false account statements and at times used investor funds directly for personal expenses.

6. Co-conspirator John Kim represented to a prospective investor that certain individuals had enjoyed robust profits investing in one or more of the KL Hedge Funds when, in truth and in fact, John Kim knew that these individuals had not invested any monies. Investors were falsely informed that an accounting firm prepared monthly statements based on actual earnings, when in fact Yung Bae Kim and Won Lee helped prepare them while knowingly using false information. The false account statements reported profits in the various funds, despite the fact that defendant and his coconspirators knew that the funds were suffering substantial losses and hemorrhaging cash.

7. Shoreland Trading was owned and controlled by defendant Won Lee after June 2003. In or around May 2004 Won Lee falsely represented to officials of Penson, a clearing firm, that funds in the account of Shoreland Trading LLC derived from his family real estate holdings in South Korea, when in truth and fact nearly all such funds derived from outside investors

and not Won Lee's family real estate holdings. Won Lee intentionally made this representation in order to qualify for more favorable trading terms than Shoreland Trading LLC otherwise would have been entitled to receive

8. To convince a prospective investor, a local attorney to invest his own funds, and to continue to attract millions of dollars of investment funds from his clients, defendant Won Lee and John Kim caused false documents to be created showing false investment returns. Defendant Won Lee and John Kim also worked together to create counterfeit letter-head and account statements of nationally-known clearing firms, such as Spear Leads Kellog, ("Spear Leads"), Penson Financial Services, and Wedbush Morgan Securities, inserted false trading figures on the documents and provided them to the attorney, and later to others. Through this process, defendants were able to convince the attorney, others, and ultimately the investors that the KL Main Fund and other KL hedge funds were not only making profitable trades but also that the money invested was being forwarded for investment as represented.

9. In order to convince investors, including the attorney, that the KL Main Fund and other KL hedge funds were making profitable trades, John Kim, along with Won Lee and Yung Kim, falsely and fraudulently represented that John Kim made a profit of nearly $20,000,000 in a single day by taking long and short positions in a single stock.

10. In order to deceive investors and others into believing that audits and other accurate financial reporting of the KL Hedge Funds were being performed by independent accountants, in July, 2004 defendant Won Lee was aware that a Delaware company named PAFS Corporation was formed, which letters stood for "Pegasus Accounting and Financial Services". Co-conspirator John Kim directed that this employee hire an accounting staff, which consisted

of at least three persons to work full-time for Pegasus. In setting up Pegasus, and hiring such persons, John Kim and Won Lee intended to foster the false impression that Pegasus was an independent accounting firm hired by KL Hedge Fund to create independent financial statements, and objectively accurate K-1 partnership statements. A Pegasus accountant was directed to create financial statements for the KL hedge funds and to create individualized IRS forms commonly known as K-1s, to be provided to individual investors in connection with their personal federal income tax returns.

11. The fraudulent activities of the KL hedge fund advisors, and their principals, that is, John Kim, Yung Kim, and Won Lee substantially jeopardized the solvency and financial security of Shoreland Trading LLC.

12. Defendant Won Lee concedes that the government would prove beyond a reasonable doubt each and every overt act of the fraud conspiracy as alleged in Count 1 of the Indictment, paragraph 29, Case No. 06-80197-Cr-KLR which detailed conduct is incorporated herein by reference.

13. As to Count 2 of the Indictment, on or about December 12, 2002, defendant Won Lee admits that he caused an Internet e-mail communication from California to Florida directed to attorney "RK" for the purpose of deceiving "RK" as to purported historical investment returns earned by several satisfied KL investors. Won Lee had actual knowledge that the information provided was false.

14. In or about December 2004, bogus trade sheets were created for a large purchase and sale of stock in the company that makes the BlackBerry e-mail device – Research In Motion ("RIMM"). The fictitious trades purported to show a one-day profit of $22 million and it

was broadcast company-wide. The RIMM trade was celebrated in KL offices on both coasts and touted to investors, including two that had been considering pulling out their investments. The RIMM trade, however, never took place.

15. The defendant joined the conspiracy charged in Count 1 voluntarily with knowledge of its illegal nature. He took all his actions during the course of his participation in the conspiracy, only some of which are referenced above, knowingly and with the specific intent to defraud.

Respectfully submitted,

JEFFREY H. SLOMAN
ACTING UNITED STATES ATTORNEY

Date: 9/16/09

By: *[signature]*
STEPHEN CARLTON
EDWARD NUCCI
ASSISTANT UNITED STATES ATTORNEYS

Date: 9/16/09

By: *[signature]*
SUSAN VAN DUSEN
ATTORNEY FOR DEFENDANT

Date: 9/16/09

By: *[signature]*
WON SOK LEE
DEFENDANT